IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARTHUR CARSON, | § | |
|                 Plaintiff, | § | |
| | § | |
| v. | § | CIVIL CASE NO. 3:17-CV-1493-L-BK |
| | § | |
| SOFIA HERNANDEZ, et al., | § | |
|                 Defendants. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order* 3, this case was automatically referred to the United States magistrate judge. The Court granted Plaintiff's motion to proceed *in forma pauperis*, but did not issue process pending preliminary screening. Upon review of the relevant pleadings and applicable law, this case should be summarily **DISMISSED WITH PREJUDICE** for failure to state a claim.

**I. BACKGROUND**

On June 6, 2017, Plaintiff filed this *pro se* civil action against VOA/Prarie Creek Village Apartments and its manager, Sofia Hernandez, alleging violations under 42 U.S.C. § 3601 of the Fair Housing Act ("FHA") and 15 U.S.C. § 1681 of the Fair Credit Reporting Act ("FCRA"), and a "conspiracy" under 42 U.S.C. § 1985. Doc. 3 at 1. Plaintiff asserts that on May 28, 2016, he submitted a rental application, which was denied a few days later because of his criminal history and credit history. Doc. 3 at 1-2. He avers that Defendants relied on his 40- and 28-year-old convictions for burglary and attempted-murder, respectively, as well as the homicide conviction of someone else with a similar name. Doc. 3 at 2. Plaintiff alleges that the denial of his rental application "amounts to a ban against African-Americans and has an adverse

discriminatory effect," because, as an African American, he "is part of a disproportionate number of those convicted and imprisoned and convicted in Texas." Doc. 3 at 2. Plaintiff further argues:

> In 2014, African-American [sic] comprised approximately 36 percent of the total population, yet [sic] incarcerated at a rate nearly three times their proportion of the General Population.  The Defendants [sic] Practice and Policy that deny Housing to those Released from Prison is critical for any successful reentry to society, and such policy is equally disparate and discriminates against African-Americans.
>
> This in conjunction with the racial aspect of those that are convicted in Texas, in 2005, the racial conviction rate in Texas per 100,000 of the Population came to: "Whites 667; Blacks 3167; Hispanics 830." See (Uneven Justice, by Marc Mauer, and Ryan S. King, 2007, The Sentencing Project). African Americans have historically garnered the most felony convictions in the United States, whether earned or not. The Defendants Policy represents a discriminatory policy.

Doc. 3 at 2-3.

Plaintiff also claims that "[t]he arbitrary use of credit history was contrary to Texas Law," which he contends requires advance written notice of the selection criteria under Texas Property Code § 92.3515. Doc. 3 at 3. Plaintiff requests declaratory and injunctive relief and damages of $1,000,000. Doc. 3 at 3.

To better ascertain Plaintiff's factual and legal allegations, the Court issued a questionnaire, Doc. 6, to which Plaintiff submitted verified responses that basically reiterated the assertions in his complaint. Doc. 7.

## II. ANALYSIS

Because Plaintiff is proceeding *in forma pauperis*, the complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). That statute provides for *sua sponte* dismissal of a complaint if the Court finds that it (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. A complaint fails to state a claim upon which relief can be granted if it does not plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

The Court liberally construes Plaintiff's filings with all possible deference due a *pro se* litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers"); *Cf.* FED. RULE CIV. PROC. 8(e) ("Pleadings must be construed so as to do justice."). Even under this most liberal construction, however, Plaintiff's complaint should be dismissed for failure to state a claim.

**A.  Plaintiff Fails to Plausibly Allege a Violation of the Fair Housing Act**

Plaintiff contends that Defendants violated the FHA, generally citing 42 U.S.C. § 3601 and arguing that there is an "adverse discriminatory effect" or "disparate impact" on African Americans. Doc. 3 at 2; Doc. 7 at 1. That section states generally that "[i]t is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States," 42 U.S.C. § 3601, and does not specifically provide for a private cause of action. Thus, the Court liberally construes Plaintiff's claim to allege a violation of 42 U.S.C. § 3604(b), which prohibits discrimination because of race in the "sale or rental of a dwelling." Such violation can be shown either by (1) proof of intentional discrimination, that is, that the defendant acted with discriminatory intent or (2) by proof of disparate impact, that is, that the defendant's policies or practices resulted in a significant discriminatory effect. *See Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, ––– U.S. –––, 135 S. Ct. 2507, 2513 (2015).

Disparate impact cases challenge practices "that have a 'disproportionately adverse effect on minorities" and are otherwise unjustified by a legitimate rationale." *Id.* (quoted case omitted).

Page **3** of **9**

In *Inclusive Communities*, the Court held:

[A] disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity. A robust causality requirement ensures that "[r]acial imbalance … does not, without more, establish a prima facie case of disparate impact" and thus protects defendants from being held liable for racial disparities they did not create.

*Id.* at 2523 (quoted case omitted). Accordingly, "[a] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id.* at 2523.

In the case *sub judice*, Plaintiff has not identified any specific policy or practice of Defendants that <u>caused</u> a disparate impact on a protected group. He avers only generally that the "practice and policy" to deny housing to those released from prison and cites a purported disparate impact on African Americans based on statistical data. Doc. 3 at 2; Doc. 7 at 2-3. Assuming, *arguendo*, that Defendants had a policy of rejecting applicants with felony convictions, regardless of the age of those convictions, Plaintiff has wholly failed to demonstrate a "robust" causal connection between the alleged policy or practice and the perceived adverse discriminatory effect. *Inclusive Cmtys.*, 135 S. Ct. at 2523. Certainly, a policy of excluding convicted felons from tenancy did not cause the underlying disparity Plaintiff cites, to-wit, the historical disproportion of African Americans convicted of felony offenses in the United States. Doc. 3 at 3. In any event, such a policy is not "otherwise unjustified by a legitimate rationale," *Inclusive Cmtys.*, 135 S. Ct. at 2513, as it is obviously pertinent to maintaining a crime-free environment.

While Rule 8(a), of the Federal Rules of Civil Procedure, does not require a plaintiff to include detailed factual allegations, a litigant must still provide more than "an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Plaintiff's pleadings offer no facts that would support the plausible inference of a "robust" causal link between a specific policy or custom of Defendant and an adverse effect on African Americans.  *Cf. Sams v. Ga W. Gate, LLC*, No. CV415-282, 2017 WL 436281, at *4 (S.D. Ga. Jan. 30, 2017) (concluding plaintiffs had alleged sufficient facts to maintain a disparate treatment claim when they pled that they were required to submit to criminal history probe because they were African Americans).  As such, Plaintiff has failed to state a claim that is plausible on its face.  *Twombly*, 550 U.S. at 555, 570.

### B.  Plaintiff's Conspiracy Allegations Fail to State a Viable claim

Insofar as Plaintiff relies on 42 U.S.C. § 1985(3), his claim fares no better.[1]  Doc. 3 at 1.  Section 1985(3) prohibits conspiring to deprive a person of equal protection of the laws or of equal privileges and immunities under the laws on the basis of race.  *Griffin v. Breckenridge,* 403 U.S. 88, 102-03 (1971).  While Plaintiff vaguely references both "42 U.S.C. 1985 'Conspiracy'" and the fact that he is African American, he wholly fails to plead any facts in support of his claim.  Doc. 3 at 1-2.  In answer to the questionnaire, when asked to identify the relevant facts, Plaintiff asserts only that "Sofia Hernandez [and] VOA-Prarie Creek Village have orchestrated a practice, policy that impacts African Americans more than any others."  Doc. 7 at 4.  He cites Defendants' "[f]ailure to adhere to their own selection criteria of four years prior rental history, when [he] had five" and "blanket ban on felony convictions, without any guiding criteria or allowance of mitigating evidence."  Doc. 7 at 4.  However, he proffers no facts from which it can

---

[1] Because sections 1985(1)-(2) relate to preventing an officer from performing duties, or intimidating a party, witness, or juror in a court proceeding, they are not relevant here. *See* 42 U.S.C. § 1985.

be gleaned that an agreement existed among the Defendants to violate his rights—as is required to adequately state a claim. Bald allegations that a conspiracy existed are insufficient under the civil rights statutes. *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987); *see also Jackson v. Biedenharn*, 429 F. App'x 369, 372 (5th Cir. 2011) (rejecting claim under section 1985(3) because of conclusory assertion of conspiracy).

### C. Plaintiff's Fair Credit Reporting Act Claim Fails to State a Plausible Claim

Likewise, to the extent Plaintiff relies on the FCRA, 15 U.S.C. §1681, he again fails to state a claim. Although Plaintiff includes the FCRA in the laundry list of statutes cites at the beginning of his complaint, Doc. 3 at 1, there is no further mention of it. Moreover, when asked by the Court's questionnaire to identify all facts on which he relies to raise a claim under the FCRA, Plaintiff asserted only that Defendants "[d]isseminat[ed] inaccurate reports over the Internet to its contractors, and others, regarding [his] credit or background." Doc. 7 at 5. Notably, Plaintiff has not claimed that Defendants obtained a consumer credit report for any impermissible purpose, as is the crux of the FCRA's prohibition. *See* 15 U.S.C. §§ 1681b(f), 1681n(a) (imposing civil liability upon person who willfully obtains consumer report for purpose that is not authorized by statute); 15 U.S.C. § 1681b(a)(3) (listing acceptable purposes for which consumer credit report can be obtained). Additionally, there is no requirement under the FCRA that a consumer give express consent in order that a credit report be obtained for "a legitimate business need … in connection with a business transaction that is initiated by the consumer." 15 U.S.C. § 1681b(a)(3)(F)(i); *see also Norman v. Northland Grp. Inc.*, 495 F. App'x 425, 426 (5th Cir. 2012) (per curiam) (holding that FCRA did not require affirmative consent from consumer to obtain credit report in connection with offer for extension of credit).

In sum, Plaintiff has offered nothing more than "labels and conclusions" in support of his claim of a violation under the FCRA. *Twombly*, 550 U.S. 544, 555, 557 (requiring litigant to "raise [his] right to relief above the speculative level" and to present more than "a naked assertion" devoid of "further factual enhancement."); *see also Iqbal*, 556 U.S. at 678 (noting that litigant must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation"). And that is insufficient.

### D. Plaintiff's claim under Texas Property Code § 92.3515 Lacks Facial Plausibility

Lastly, Plaintiff claims that Defendants failed to give him "advance written notice specifying credit as a selection criteria" under section 92.3515 of the Texas Property Code. Doc. 3 at 3; Doc. 7 at 6. As relevant here, that statute provides:

> (a) At the time an applicant is provided with a rental application, the landlord shall make available to the applicant printed notice of the landlord's tenant selection criteria and the grounds for which the rental application may be denied, including the applicant's:
>
> (1) criminal history;
> (2) previous rental history;
> (3) current income;
> (4) credit history; or
> (5) failure to provide accurate or complete information on the application form.
>
> * * *
>
> (e) If the landlord rejects an applicant and the landlord has not made the notice required by Subsection (a) available, the landlord shall return the application fee and any application deposit.
>
> (f) If an applicant requests a landlord to mail a refund of the applicant's application fee to the applicant, the landlord shall mail the refund check to the applicant at the address furnished by the applicant.

TEX. PROP. CODE ANN. § 92.3515. However, Plaintiff pleads no facts that this Court could liberally construe to raise a claim for relief under section 92.3515(e). Doc. 3 at 3; Doc. 7. He

fails even to suggest that—at a bare minimum—he requested a refund of any application fee paid by him. Accordingly, Plaintiff's claimed violation of section 92.3515 fails to state a plausible claim.

### III. LEAVE TO AMEND

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to dismissal. *See Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). One of the methods "to bring into focus the factual and legal bases of" a *pro se* complaint – as the Court did in this case – is "requesting a more definite statement … through a questionnaire." *See Gregory v. McKennon*, 430 F. App'x 306, 308 (5th Cir. 2011) (per curiam) (citing *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994)); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (verified answers to questionnaire become part of pleadings). However, based on the legal theories and facts Plaintiff posits in both the complaint and answers to the questionnaire, he cannot, as a matter of law, state a colorable legal claim under the Fair Credit Reporting Act, 42 U.S.C. § 1985, or TEX. PROP. CODE § 92.3515. Moreover, the Court must conclude, based on Plaintiff's responses to the inquiries regarding his Fair Housing Act claim, that he has already pled his best case. Thus, granting leave to amend would be futile and cause needless delay.

## IV. RECOMMENDATION

For the foregoing reasons, it is recommended that Plaintiff's claims be summarily **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

**SIGNED** July 26, 2018.

---
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

---
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE